# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

KEVIN ANDERSON,

        Plaintiff,

v.                                                       Case No. 17-1234-JWB

BESTMARK EXPRESS, INC.,

        Defendant.

## MEMORANDUM AND ORDER

This case comes before the court on Defendant Bestmark Express, Inc.'s motion for summary judgment (Doc. 9). The motion has been fully briefed and is ripe for decision. (Docs. 20, 27.) Defendant's motion is DENIED for the reasons stated herein.

**I.    Facts**

Defendant operates a trucking business and hauls cargo to several states. In August 2015, Defendant hired Plaintiff Kevin Anderson as an over-the-road truck driver ("driver"). Federal law requires drivers to be randomly tested for alcohol and controlled substances. The random tests must be unannounced and the driver must proceed to the test site unless he is engaged in a safety-sensitive function, i.e. driving. If a driver refuses a test, Defendant cannot permit that driver to continue performing safety-sensitive functions. (Doc. 10 at 2-3; 20 at 3-5.)

On October 7, 2015, Defendant's third-party administrator who coordinates the DOT drug testing randomly selected four drivers to be tested. Plaintiff was one of the randomly selected drivers.[1] On or about October 22, Plaintiff applied for employment with Sunset

---

[1] Plaintiff states that he denies this fact because he does not have sufficient information to admit or deny the same. (Doc. 20 at 6.) In responding to a fact set forth in a motion for summary judgment, the non-movant must

Logistics ("Sunset"), another trucking company. Sunset made a conditional offer to Anderson, which was contingent on a review of Plaintiff's driving record and information from Plaintiff's employers, including Defendant. Defendant was not aware of the offer made to Plaintiff. (Doc. 10 at 3-4; 20 at 5-6.)

On October 30, Plaintiff and his wife, Rebecca, were at Defendant's terminal in Strong City, Kansas. Plaintiff reported to the terminal after being instructed to report for maintenance to his tractor and trailer. While at the terminal, Plaintiff and Mike Miller, Defendant's Vice-President, revised Plaintiff's log books. At approximately 1:47 p.m., Jerry Russell, Defendant's General Manager, called a health clinic in Emporia to inform them that Plaintiff would be arriving for a DOT drug test. While Defendant contends that Russell told Plaintiff about the random drug test, Plaintiff disputes this fact. It is undisputed that Rebecca became ill and Plaintiff drove Rebecca to the hospital in one of Defendant's vehicles. Plaintiff and Rebecca were at the hospital from 2:50 p.m. until 5:30 p.m. During this time, Russell made calls to Plaintiff but Plaintiff did not answer the calls. Rebecca also received a call from Russell during which he inquired about her health. Plaintiff returned to Defendant's terminal sometime after 6:00 p.m. (Doc. 10 at 4-5; 20 at 6-9.)

Upon Plaintiff's return, Plaintiff and Miller had a conversation during which Plaintiff quit his employment effective immediately due to Miller's decision to revoke permission for Plaintiff to visit his daughters in Florida. According to Plaintiff, Miller asked him if he had done his drug test. Plaintiff said no because he had no knowledge of the drug test. Miller then informed Plaintiff that he just "f***ed himself." Miller said that Plaintiff "should have known" that he was selected for a random drug test because Miller asked him to come to the office. Miller did

---

specifically controvert the fact for it to be disputed. If it is not specifically controverted, the fact is deemed admitted. *See* D. Kan. R. 56.1(a). All facts to which Plaintiff has responded in a similar fashion are deemed admitted as they have not been specifically controverted.

not advise Plaintiff that he could take the drug test nor did he tell Plaintiff where the drug test could be taken. Plaintiff then left the terminal in a rented vehicle and returned to his home in Florida. (Doc. 10 at 6; 20 at 10.)

Plaintiff informed Sunset that Defendant claimed that he refused a drug test but insisted that he had not refused. On November 2, Sunset sent Plaintiff an email in which Sunset suggested that Plaintiff contact DOT about the circumstances surrounding his departure from Defendant. Sunset informed Plaintiff that they will determine whether they could proceed after receiving a determination letter regarding the drug test and its validity. On November 4, Sunset faxed an employment verification request to Defendant. This was the first indication that Defendant had regarding Plaintiff's prospective employment with Sunset. Russell completed the verification and indicated on the same that Plaintiff refused a drug test on October 30. (Doc. 10 at 6-7; 20 at 10-11.)

On November 5, Sunset sent Plaintiff the following email after receiving Plaintiff's employment verification request from Defendant:

> Kevin,
>
> BestMark is obviously not happy you quit w/o notice.
>
> Unfortunately our hands are tied until you get a letter from the KS DOT indicating it was an invalid test request.
>
> I am providing you the attached form as a courtesy.
>
> If I were you, I would call the DOT office in the region where BestMark is located, explain IN DETAIL what happened the days prior to, and up to the day you left.
>
> As gently, but urgently as possible, ask them for a [sic] invalid test request letter, as this is affecting your employment opportunities.
>
> Until you get that letter from the DOT, we are unable to move forward.

(Doc. 10, Exh. 7).

Plaintiff contends that he lost the opportunity for a job due to Defendant's actions in informing Sunset that he refused a drug test. On January 8, 2016, Plaintiff sent DOT an email regarding the events which occurred on October 30, 2015. (*See* Doc. 20, Exh. C.) Defendant was not contacted by DOT regarding Plaintiff's allegation that the drug test was invalid.

Plaintiff filed this action alleging claims of defamation and tortious interference. Defendant has moved for summary judgment on both claims.

## II. Summary Judgment Standards

Summary judgment is appropriate if the moving party demonstrates that there is no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A fact is "material" when it is essential to the claim, and the issues of fact are "genuine" if the proffered evidence permits a reasonable jury to decide the issue in either party's favor. *Haynes v. Level 3 Commc'ns*, 456 F.3d 1215, 1219 (10th Cir. 2006). The movant bears the initial burden of proof and must show the lack of evidence on an essential element of the claim. *Thom v. Bristol—Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2004) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). The nonmovant must then bring forth specific facts showing a genuine issue for trial. *Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005). The court views all evidence and reasonable inferences in the light most favorable to the nonmoving party. *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004).

## III. Analysis

### a. Defamation

To establish a claim of defamation, Plaintiff must prove the following: "1) false and defamatory words 2) that are communicated to someone else and (3) that injure the reputation of

the person defamed." *Herrman v. Williams*, 386 P.3d 925, 2016 WL 7324446, *4 (Kan. Ct. App. Dec. 16, 2016). Defendant contends that Plaintiff cannot establish that the statement was false and that it resulted in Plaintiff's loss of employment. The court disagrees. Viewed in a light most favorable to Plaintiff, the facts show that Plaintiff was not informed about the random drug screen until after he had quit his employment. Plaintiff was also not informed that he could still take the drug test and where he needed to report in order to do so. Therefore, Plaintiff has shown a dispute of material fact as to whether Defendant's statement that Plaintiff refused a drug test was false.

With respect to causation, Defendant contends that Plaintiff cannot establish that his loss of a position was due to the statement regarding the refused drug test. The court finds that Plaintiff has shown a dispute as to material fact regarding causation. After receiving the employment verification form from Defendant, Sunset informed Plaintiff that he could not be employed. Defendant argues that Sunset told Plaintiff to obtain a determination letter regarding the validity of the drug screen, and that the failure to provide the letter was the reason for Plaintiff's loss of employment. (Doc. 27 at 6.) Plaintiff, however, would not have needed to obtain a determination letter if Defendant had not informed DOT about the refusal. Plaintiff also contacted DOT, albeit belatedly, regarding his version of events. Therefore, a question of fact remains as to whether Defendant's statement harmed Plaintiff's reputation.

### i. Privilege

Defendant also moves for summary judgment on the basis that the statement was privileged. Defendant contends that the statement was entitled to conditional privilege under both federal and state law. Pursuant to 49 C.F.R. 391.23(l)(1), a Federal Motor Carrier Safety Regulation, an action for defamation or interference with contract that is based on information

that is disclosed to potential employers, such as a DOT drug test, cannot be brought against the person who disclosed the information. The regulation, however, does not apply to "persons who knowingly furnish false information." *Id.* Viewing the facts in a light most favorable to Plaintiff, a jury could find that Defendant knowingly furnished false information to Sunset. Therefore, summary judgment is denied on this basis.

Defendant also argues that the information disclosed to Sunset is privileged under Kansas law and, therefore, Plaintiff must make an additional showing of bad faith. Under Kansas law, a "qualified privilege exists for employment communications made in good faith among people who have the same interest or duty in the subject of the communication." *Herrman*, 2016 WL 7324446, *4; *see also Turner v. Halliburton Co.*, 240 Kan. 1, 14–15, 722 P.2d 1106, 1117 (1986) (information from a former employer to a prospective employer regarding a past employee is privileged). "This privilege exists in the context of communications by a former employer to a potential employer concerning a job applicant…." *Booth v. Elec. Data Sys. Corp.*, 799 F. Supp. 1086, 1091 (D. Kan. 1992), *opinion supplemented on denial of reconsideration*, 1992 WL 223784 (D. Kan. Aug. 31, 1992). Because the information is privileged, Plaintiff must show actual malice on the part of Defendant. *Turner*, 240 Kan. at 10.

Defendant contends that Plaintiff cannot show actual malice. Although the question of malice may be appropriate to determine on summary judgment, it is normally a question of fact for the jury. *Id.* at 8; *see also M W., Inc. v. Oak Park Mall, L.L.C.*, 44 Kan. App. 2d 35, 56, 234 P.3d 833, 848 (2010) ("The issues of defendants' motive and the presence or absence of malice are typically questions for the jury.") Defendant argues that there is no evidence of malice as it provided the information to Sunset for driver safety and there is "no evidence that Bestmark supplied false information to Sunset Logistics or that Bestmark was motivated by evil-

mindedness or a specific intent to injure plaintiff." (Doc. 10 at 15.) Viewing the facts in a light most favorable to Plaintiff, Plaintiff was not informed of the drug test and did not refuse to take a drug test. Moreover, after Plaintiff quit, Plaintiff was never informed that he could still take the test. Rather, he was told that he was "f***ed." which might imply a little malice. Contrary to Defendant's position that the communication to Sunset was made for driver safety, if the jury finds that Plaintiff did not refuse a drug test, a jury could conclude the statements were not made in the interest of driver safety but with malicious intent. *See Ziemkiewicz v. R+L Carriers, Inc.*, 996 F. Supp. 2d 378, 394–95 (D. Md. 2014) (question of malice a fact issue when employer falsely reported that Plaintiff refused a drug test). The court finds that the question of malice is one for the jury.

Therefore, Defendant's motion for summary judgment on Plaintiff's defamation claim is denied.

### b. Tortious Interference

In order to establish a claim of tortious interference, Plaintiff must prove the following:

> (1) the existence of a business relationship or expectancy with the probability of future economic benefit to the plaintiff; (2) knowledge of the relationship or expectancy by the defendant; (3) that, except for the conduct of the defendant, plaintiff was reasonably certain to have continued the relationship or realized the expectancy; (4) intentional misconduct by defendant; and (5) damages suffered by plaintiff as a direct or proximate cause of defendant's misconduct.

*Turner*, 240 Kan. at 12.

First, Defendant contends that Plaintiff's claim fails because the communication was privileged under federal and state law. Although Defendant remains free to assert privilege as a defense during trial which would negate the element of intentional misconduct, *see id.* at 14-15, these arguments fail on summary judgment as there is a disputed fact issue as to whether the statement was false and if Defendant acted with malice as discussed, *supra*.

Defendant also argues that Plaintiff cannot establish that it knew about Plaintiff's relationship with Sunset. The facts show that Sunset sent an employment verification form to Defendant. Defendant stated in its statement of facts that this "was the first time Bestmark learned that Sunset Logistics was a prospective employer of plaintiff." (Doc. 10 at 7.) Defendant's knowledge that Sunset was a prospective employer is sufficient to create a dispute of material fact as to Defendant's knowledge of an expectancy of a business relationship between Sunset and Plaintiff.

Finally, Defendant argues in its reply that Plaintiff cannot establish that the employment loss was due to Defendant's conduct. (Doc. 27 at 5-6.) As discussed *supra*, the court finds that Plaintiff has created a dispute as to material fact regarding causation.

Defendant's motion for summary judgment on Plaintiff's claim of tortious interference is denied.

### IV. Conclusion

Defendant's motion for summary judgment (Doc. 9) is DENIED.

IT IS SO ORDERED this 6th day of August, 2018.

                                                       s/ John W. Broomes
                                                       JOHN W. BROOMES
                                                       UNITED STATES DISTRICT JUDGE